Paul T. Cullen, Esq. (#193575)
The Cullen Law Firm, APC
9800 Topanga Canyon Boulevard
Suite D, PMB 325
Chatsworth, CA 91311-4057
paul@cullenlegal.com
Tel: 818-360-2529
Fax: 866-794-5741

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| **ROBERT SANDERS**, an individual,<br><br>Plaintiff,<br>v.<br><br>**TRANSAMERICA LIFE INSURANCE COMPANY**, an Iowa corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | **Case No.: 4:25-cv-9517**<br><br>**Class Action: Rule 23 Plaintiff Class**<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND PENALTIES**<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff ROBERT SANDERS, an individual, and for causes of action against Defendants TRANSAMERICA LIFE INSURANCE COMPANY, an Iowa corporation; and DOES 1 through 50, inclusive, and each of them, complains and alleges, as follows:

## I. INTRODUCTION

1. Plaintiff ROBERT SANDERS ("Plaintiff") brings this action against Transamerica Life Insurance Company ("Defendant Transamerica") for breach of contract, bad faith denial of insurance benefits, financial elder abuse, unfair business practices, and related claims arising from Defendant's unlawful and fraudulent conduct regarding Plaintiff’s life insurance policy.

2. Defendant improperly demanded increased premiums and misrepresented the terms of the life insurance contract, causing Plaintiff significant financial harm and emotional distress.

3. Defendant’s modus operandi appears to be to collect substantial premium payments from insureds and, when those insureds approach an age where the risk of payout on the policy increases, to cut them off through subterfuge. Specifically, Defendant dramatically increases premium rates to unsustainable levels, citing allegedly untimely payments, despite knowing that those payments were timely made. Defendant exploits technicalities to create a false record of default, ultimately forcing insureds to forfeit their policies.

4. The mailbox rule applies—Plaintiff’s premium payment is deemed paid upon deposit into the mail. Defendant had no legal or factual basis to delay processing Plaintiff’s premium or to claim a lapse in coverage.

5. Plaintiff seeks compensatory and punitive damages due to Defendant’s willful, malicious, and oppressive conduct.

6. Plaintiff seeks treble damages pursuant to Civil Code § 3345(b) for Defendant’s financial elder abuse and fraudulent conduct.

7. Punitive damages may be assessed in addition to treble damages. The California Legislature specifically enacted these damage multipliers to penalize and deter egregious financial elder abuse, recognizing that such misconduct warrants severe punishment.

## II. JURISDICTION, VENUE AND DIVISIONAL ASSIGNMENT

8. This Court has **subject matter jurisdiction** over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

9. **Plaintiff's Citizenship:** Plaintiff is an individual who, at all times relevant hereto, was a citizen and resident of the State of California, residing in Lafayette, County of Contra Costa, California.

10. **Defendant's Citizenship:** Defendant Transamerica Life Insurance Company is, and at all relevant times was, a corporation incorporated under the laws of the State of Iowa, with its principal place of business in Cedar Rapids in Linn County, Iowa. Defendant is therefore a citizen of Iowa for purposes of diversity jurisdiction under 28 U.S.C. § 1332(c)(1).

11. **Venue:** Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district, specifically within Contra Costa County, California.

12. **Divisional Assignment:** Divisional Assignment to the Oakland Division of the Northern District of California is proper pursuant to Local Rule 3-2(d) because the acts and omissions alleged herein occurred in Contra Costa County.

## III. PARTIES AND ALTER EGO ALLEGATIONS

13. Plaintiff ROBERT SANDERS ("Plaintiff") is an individual over the age of 65 and a resident of Contra Costa County, California.

14. Defendant TRANSAMERICA LIFE INSURANCE COMPANY ("Transamerica") is, and at all relevant times was, a corporation organized and existing under the laws of the State of Iowa, authorized to conduct and conducting

substantial business in the State of California. Transamerica maintains its designated agent for service of process at CT Corporation System, 330 N. Brand Blvd., Suite 700, Glendale, CA 91203.

15. Plaintiff is informed and believes, and thereon alleges, that at all relevant times, there existed a unity of interest and ownership between Transamerica and DOES 1 through 50, inclusive, such that any individuality and separateness between them has ceased to exist and that Transamerica is the alter ego of said DOE Defendants.

16. Plaintiff is further informed and believes, and thereon alleges, that adherence to the fiction of the separate existence of Transamerica and said DOE Defendants would permit an abuse of the corporate privilege and would sanction fraud and promote injustice.

17. Plaintiff is informed and believes, and thereon alleges, that at all relevant times, each of the Defendants was the agent, employee, partner, joint venturer, co-conspirator, and/or alter ego of each of the remaining Defendants, and in doing the things alleged herein, was acting within the course and scope of such agency, employment, partnership, joint venture, conspiracy, and/or alter ego relationship, and with the knowledge and consent of each of the other Defendants.

## IV. FACTUAL ALLEGATIONS

18. On or about May 16, 2012, Plaintiff purchased a Universal Life Insurance Policy from Defendant Transamerica, in the face amount of $1,000,000.

19. He was 68 years old at the time he purchased the policy.

20. The only illustration Plaintiff ever received for the policy provided for a level premium of $24,660 for the first 20 years.

21. Plaintiff paid all premiums required under the policy through 2024.

22. In May 2023, Plaintiff issued his annual premium check on or about May 19, 2023, and he deposited it in the mail with the United States Postal Service in

Walnut Creek, California with postage thereon fully prepaid within 1-2 days thereafter.

23. Defendant's records now reflect conflicting receipt dates for this payment: June 21, 2023, and June 23, 2023.

24. Defendant negotiated Plaintiff's premium check without providing any prior notice of late payment or lapse, and Defendant accepted and processed the payment.

25. On or about April 29, 2024 Plaintiff received a letter from Defendant dated April 16, 2024 demanding increased premium of $43,990.04 effective May 16, 2024 to maintain the policy. This was the first and only notice that Defendant gave to Plaintiff that Plaintiff's insurance premium payment from the prior year (2023) ostensibly had been received after its due date.

26. Plaintiff contacted Defendant's customer service on May 1, 2024, and requested:

a. A full copy of the policy;

b. Identification of the policy provision supporting the increased premium;

c. A complete premium payment history; and,

d. A litigation hold on recorded conversations.

27. Defendant failed to provide the requested documents within the promised timeframe and refused to explain the basis for the increased premium.

28. In addition to having extracted $38,000 from Plaintiff in 2024, which was well beyond the level premium to which it was entitled, Transamerica subsequently demanded—and Plaintiff paid—an additional $12,654 before September 15, 2024, in order to maintain a rider on the original policy that ensured a level premium for the first twenty years.

29. There is no contractual basis for this additional demand, and despite Plaintiff repeatedly asking Transamerica to identify any provision in the written policy or

any other agreement that would authorize such a charge, Transamerica has failed and refused to do so.

30. Transamerica threatened Plaintiff that if he did not pay the demanded amount, Transamerica would unilaterally raise premiums to any level it deemed appropriate in its sole discretion, or potentially cancel the policy altogether—a patently unreasonable outcome that is unacceptable to Plaintiff.

31. Plaintiff purchased the life insurance policy specifically to provide financial protection for his adult son, who suffers from serious medical issues and special needs. Transamerica is fully aware of this fact, and knows that if Plaintiff were to die, the life insurance proceeds would be critically needed to care for his son.

32. Transamerica is also aware that Plaintiff is a retiree, and appears to be profiteering on an allegedly late payment, perhaps hoping that Plaintiff will abandon the policy if the cost is raised high enough.

33. Defendant's failure to provide notice or justification for the increased premium constitutes fraud, bad faith, and financial elder abuse.

## V. CLASS ALLEGATIONS

34. Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).

35. Plaintiff seeks to represent the following **Class**:

> All persons in the United States who, at any time between January 1, 2010 and the present, owned or were insured under a life insurance policy issued by Transamerica Life Insurance Company for at least one year, and who received from Transamerica a notice of premium increase, due to alleged late payment and/or policy lapse.

36.Plaintiff also seeks to represent the following subclasses based on age and state-specific statutory protections:

a. The "**60+ Subclass**," consisting of all members of the Class who, at the time of the Challenged Conduct[1], were age 60 or older and resided in a state that provides civil remedies for financial exploitation of persons aged 60 and older, including but not limited to Washington, Nevada, Florida, Texas, and Arizona.

b. The "**65+ Subclass**," consisting of all members of the Class who, at the time of the Challenged Conduct, were age 65 or older and resided in a state that provides civil remedies for elder financial abuse, including but not limited to California and Oregon.

c. The "**Tort Remedy States Subclass,**" consisting of all members of the Class who, at the time of the Challenged Conduct, resided in the states of California, Arizona, Texas, Nevada, Washington and/or Florida.

d. The "**California Subclass,**" consisting of all members of the Class who, at the time of the Challenged Conduct, resided in the state of California.

37. These subclasses seek additional statutory remedies and/or tort laws under the laws of their respective states, including but not limited to treble damages, attorneys' fees, injunctive relief, emotional distress damages, and compensatory or punitive damages as authorized by statute or operative law.[2]

38. Plaintiff anticipates that discovery will confirm that Transamerica's conduct affected similarly situated elderly insureds residing in other states with protective

---

[1] The **Challenged Conduc**t is the sending of the notice of premium increase to insureds due to alleged late payment and/or policy lapse.

[2] Declaratory and injunctive relief is appropriate across states due to common course of conduct and uniform policy language.

financial elder abuse statutes, including but not limited to Oregon, Washington, Nevada, Florida, Texas, and Arizona.

39. Plaintiff reserves the right to seek leave to amend this Complaint to name additional class representatives who satisfy standing and typicality requirements in those jurisdictions. Nevertheless, Plaintiff seeks to represent The California subclass, and other subclasses where applicable law is substantially similar, pending further discovery.

40. Excluded from the Class are: (a) Defendant and its officers, directors, affiliates, legal representatives, successors, subsidiaries, and assigns; (b) the judicial officers and their immediate family members and staff assigned to this case; and (c) persons who timely and properly exclude themselves from the Class as permitted by the Court.

41. The Class and subclasses are so numerous that joinder of all members is impracticable. Transamerica has issued tens of thousands of long-term life insurance policies nationwide. The precise number of affected policyholders is uniquely known to Defendant, but is estimated to be in the thousands.

42. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members. These common questions include:

a. Whether Transamerica has a pattern or practice of targeting long-term policyholders for increased premiums or termination;

b. Whether Transamerica's interpretation of the policy to require *physical receipt of premium payments by the due date* — rather than treating the payment as made upon mailing — violates the terms of the policy or applicable law (e.g., the mailbox rule).

c. Whether Transamerica provided timely and contractually compliant notice of any alleged late payments or required premium increases;

d. Whether Transamerica's conduct breached the express or implied terms of its insurance contracts;

e. Whether Transamerica's conduct violated California's Unfair Competition Law (Bus. & Prof. Code § 17200 et seq.);

f. Whether Transamerica's conduct constitutes bad faith or financial elder abuse under California law;

g. Whether members of the Class are entitled to declaratory, injunctive, or monetary relief.

43. Plaintiff's claims are typical of the claims of the Class and subclass in that he maintained his policy for more than ten years, made timely payments, and was thereafter subjected to an unexpected and unexplained premium increase, without adequate prior notice.

44. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained competent counsel experienced in complex litigation, class actions, and insurance bad faith law.

45. Class certification is appropriate under Rule 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive and declaratory relief with respect to the Class as a whole.

46. Class certification is also appropriate under Rule 23(b)(3) because the questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Among other things, many Class members are elderly or retired, and likely lack the resources or sophistication to bring individual actions.

47. Plaintiff seeks to represent the Class with respect to all claims set forth in this Complaint, including breach of contract, bad faith, financial elder abuse, fraud, and violations of the Unfair Competition Law.

48. Plaintiff will seek leave to name additional subclass representatives as discovery confirms the applicability of state-specific remedies.

49. Plaintiff seeks compensatory damages, restitution, declaratory and injunctive relief, attorneys' fees, and any other relief the Court deems appropriate on behalf of himself and the Class.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Breach of Contract

(By the **Class** Against All Defendants)

50. Plaintiff realleges and incorporates by reference all preceding paragraphs.

51. Plaintiff and Defendant entered into a valid life insurance contract.

52. Plaintiff fully performed all obligations required under the contract.

53. Plaintiff's payment, properly deposited in the U.S. mail with adequate postage, constitutes timely performance under California law and standard insurance practices. Defendant's refusal to credit that payment violated the terms of the contract and implied covenant.

54. Defendant breached the contract by baselessly increasing premiums and making unjustified demands.

55. Plaintiff suffered damages.

56. Defendant's breach of contract was a substantial factor in causing Plaintiff's damages.

### SECOND CAUSE OF ACTION

### Breach of Implied Covenant of Good Faith and Fair Dealing

(By the **California Subclass** and the **Tort Remedy States Subclass** Against All Defendants)

57. Plaintiff realleges and incorporates by reference all preceding paragraphs.

58. Plaintiff and Defendant entered into a contract.

59. Plaintiff did all, or substantially all of the significant things that the contract required him to do.

60. Defendant owed Plaintiff an implied duty of good faith and fair dealing, thereby preventing plaintiff from receiving the benefits under the contract at the agreed upon price.

61. Defendant breached this duty by manipulating records and threatening policy forfeiture.

62. Defendant acted in bad faith.

63. As a proximate result of Defendant's actions taken in bad faith, Plaintiff was harmed and suffered damages.

64. Some of that harm manifested itself in Plaintiff suffering significant emotional distress, including anxiety, uncertainty, and fear over loss of coverage and his family's financial security.

65. Defendant's conduct was carried out with oppression, fraud, and malice as defined in Civil Code § 3294, thereby entitling Plaintiff to an award of punitive damages in an amount sufficient to punish Defendant and to deter such wrongful conduct in the future.

## THIRD CAUSE OF ACTION

**Financial Elder Abuse –**

California Welfare & Institutions Code §§ 15610.27, 15657.5

(By the **65+ Subclass** Against All Defendants)

66. Plaintiff realleges and incorporates by reference all preceding paragraphs.

67. At the time he purchased the policy 13 years ago, Plaintiff was already an elder as defined by statute. *See, e.g.,* California Welfare & Institutions Code § 15610.27. *See also* ORS § 124.100 et seq.; RCW § 74.34.200; NRS § 41.1395; F.S.A. § 415.1111; Tex. Hum. Res. Code § 48.002, § 48.052; and A.R.S. §§ 46-455, 46-456.

68. Plaintiff is now in his 80s.

69. Defendant took, secreted, appropriated, obtained, or retained Plaintiff's property for a wrongful use, with intent to defraud, and/or by undue influence.

70. Specifically, Defendant improperly withheld or terminated Plaintiff's accrued policy benefits, after Plaintiff had paid premiums for more than a decade, by invoking a lapse based on non-receipt of payment, despite Plaintiff's timely mailing of the same. This was done without adequate prior notice and with the intent to cause Plaintiff to lose his policy value and future coverage, constituting a wrongful taking of Plaintiff's property by deceit and undue influence, within the meaning of California Welfare & Institutions Code § 15610.30.

71. Plaintiff's payment, properly deposited in the U.S. mail with adequate postage, constitutes timely performance under California law and standard insurance practices. Defendant's refusal to credit that payment violated the terms of the contract and implied covenant.

72. As a proximate result thereof, Plaintiff was harmed.

73. Some of that harm manifested itself in Plaintiff suffering significant emotional distress, including anxiety, uncertainty, and fear over loss of coverage and his family's financial security.

74. Defendant's conduct was a substantial factor in causing Plaintiff's harm.

75. Plaintiff seeks treble damages under Civ. Code § 3345(b).

76. Plaintiff also seeks attorneys' fees under Welf. & Inst. Code § 15657.5.

77. Defendant's conduct was carried out with oppression, fraud, and malice, thereby entitling Plaintiff to an award of punitive damages in an amount sufficient to punish Defendant and to deter such wrongful conduct in the future.

## FOURTH CAUSE OF ACTION

**Intentional Misrepresentation** (CACI 1900)

(By the **California Subclass** Against All Defendants)

78. Plaintiff realleges and incorporates by reference all preceding paragraphs.

79. On or about May 9, 2012, which was the date of Plaintiff purchased purchase of Plaintiff's policy, at his home in Lafayette, California, in a document created on or about that date and transmitted through an independent agent James R. DiPippo, Defendant communicated to Plaintiff that his premium of $24,660 would remain level for 20 years, so long as he timely paid his premium.

80. Defendant's representation was false.

81. Defendant knew that the representation was false when it made the representation, or it made the representation recklessly and without regard for its truth.

82. Defendant intended Plaintiff to rely upon that representation.

83. Plaintiff reasonably relied on Defendant's representation.

84. Plaintiff was harmed.

85. Plaintiff's reliance on Defendant's misrepresentation was a substantial factor in causing his harm.

86. Defendant's conduct was carried out with oppression, fraud, and malice as defined in Civil Code § 3294, thereby entitling Plaintiff to an award of punitive damages in an amount sufficient to punish Defendant and to deter such wrongful conduct in the future.

## FIFTH CAUSE OF ACTION

**Negligent Misrepresentation** (CACI 1903)

(By the **California Subclass** Against All Defendants)

87. Plaintiff realleges and incorporates by reference all preceding paragraphs except those that set forth the preceding Fourth Cause of Action.

88. This cause of action is pled in the alternative to the 4th cause of action for intentional misrepresentation.

89. On or about May 9, 2012, which was the date of Plaintiff purchased purchase of Plaintiff's policy, at his home in Lafayette, California, in a document created on or about that date and transmitted through an independent agent James R. DiPippo,

Defendant communicated to Plaintiff that his premium of $24,660 would remain level for 20 years, so long as he timely paid his premium.

90. Defendant's representation was false.

91. Even if Defendant may have believed the representation was true, it had no reasonable grounds for so doing when it made the representation.

92. Defendant intended Plaintiff to rely upon the representation.

93. Plaintiff reasonably relied on Defendant's representation.

94. Plaintiff was harmed.

95. Plaintiff's reliance on Defendant's misrepresentation was a substantial factor in causing his harm.

**SIXTH CAUSE OF ACTION**

**Violation of Business & Professions Code § 17200 (UCL)**

(By the **California Subclass** Against All Defendants)

96. Plaintiff realleges and incorporates by reference all preceding paragraphs.

97. Defendant engaged in unlawful, unfair, and fraudulent business acts:

a. Demanding improper payments;
b. Manipulating records;
c. Baselessly threatening cancellation.

98. Plaintiff and others were harmed.

99. Plaintiff seeks restitution and injunctive relief.

**SEVENTH CAUSE OF ACTION**

**Declaratory Relief**

(By the **Class** Against All Defendants)

100. Plaintiff realleges and incorporates by reference all preceding paragraphs.

101. An actual controversy exists regarding the policy/policies in question.

102. An actual controversy also exists between Plaintiff and the Defendant as to whether Defendant's conduct violates the financial elder abuse statutes of states

including but not limited to Oregon, Washington, Nevada, Florida, Texas, and Arizona.

103. Pursuant to, *inter alia,* 28 U.S.C. § 2201, Plaintiff seeks a declaration that:

a. The policies remain in force;

b. The mailbox rule applies to the policies;

c. No additional premiums over the level premium promised by Defendants are or were owed; and,

d. Such conduct constitutes financial exploitation, wrongful taking, or undue influence under the relevant laws of those jurisdictions for the benefit of similarly situated policyholders residing there.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. Compensatory damages, including financial losses and emotional distress to the maximum extent permitted by law, but in excess of $75,000.00;

2. Statutory remedies as follows:

a. Statutory remedies for the 60+ Subclass under Arizona Revised Statutes § 46-456 and § 46-455 for the 60+ Subclass members who are domiciled in Arizona;

b. Statutory remedies for the 60+ Subclass under Texas Human Resources Code § 48.052 and related provisions for the 60+ Subclass members who are domiciled in Texas;

c. Statutory remedies for the 60+ Subclass under Washington Revised Code § 74.34.200 for the 60+ Subclass members who are domiciled in Washington;

d. Statutory remedies for the 60+ Subclass under Florida Statutes § 415.1111 for the 60+ Subclass members who are domiciled in Florida;

e. Statutory remedies for the 60+ Subclass under Nevada Revised Statutes § 41.1395 for the 60+ Subclass members who are domiciled in Nevada;

f. Statutory remedies for the 65+ Subclass under Oregon Revised Statutes § 124.100 et seq. for the 65+ Subclass members who are domiciled in Oregon;

g. Statutory remedies for the 65+ Subclass under California Welfare & Institutions Code § 15657 .5 and Civil Code § 3345(b) for the 65+ Subclass members who are domiciled in California;

3. Restitution of excess premiums wrongfully demanded;

4. Treble damages pursuant to Civil Code § 3345(b);

5. Punitive damages under Civil Code § 3294;

6. Attorneys' fees and costs under Welfare & Institutions Code § 15657.5;

7. Injunctive relief prohibiting Defendant from further deceptive practices;

8. Declaratory relief confirming Plaintiff's rights under the policy; and,

9. Any other relief the Court deems just and proper.

Dated: November 4, 2025

**The Cullen Law Firm, APC**

Paul T. Cullen, Esq.
Attorneys for Plaintiff
ROBERT SANDERS

///

///

///

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

Dated: November 4, 2025

**The Cullen Law Firm, APC**

Paul T. Cullen, Esq.
Attorneys for Plaintiff
ROBERT SANDERS