UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

ROBERT SANDERS,

Plaintiff,

v.

TRANSAMERICA LIFE INSURANCE COMPANY,

Defendant.

Case No. 25-cv-09517-VC (LB)

**ORDER DENYING MOTION TO QUASH AND GRANTING IN PART ALTERNATIVE MOTION FOR PROTECTIVE ORDER**

Re: ECF No. 45

**INTRODUCTION**

In this putative class action, the plaintiff alleges that defendant Transamerica Life Insurance has a modus operandi of forcing the lapse of life insurance policies held by elderly policyowners by holding timely mailed premium checks for weeks, treating them as late, and then demanding higher premiums based on the allegedly late payments. For example, the plaintiff mailed his 2023 premium check (dated May 19, 2023) within one to two days of that date, and Transamerica did not treat it as received until June 21 or 23 and demanded an increased premium based on the late payment.[1] Transamerica has a different account: the plaintiff backdated the check and mailed it after June 13, 2023, and his 2021 and 2022 premiums have the same payment pattern.[2]

---

[1] Compl. – ECF No. 1 at 2 (¶ 3), 4–10 (¶¶ 22–25, 34–49). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Opp'n – ECF No. 50 at 2, 4–5; Check, Ex. 2 to Smelley Decl. – ECF No. 50-3 at 2.

To support its backdating theory, Transamerica seeks discovery through a Rule 45 subpoena on non-party Mechanics Bank for five years (2020 through 2024) of monthly statements for the checking account of the plaintiff's law-practice professional corporation and copies of all checks drawn on the account during that period.[3] The plaintiff moves to quash the subpoena or, in the alternative, for a protective order narrowing it and seeks his fees.[4]

The motion to quash is denied and the motion for a protective order is granted in part. The plaintiff's privacy interest in his professional corporation's financial records gives him standing to challenge the subpoena, and he may seek protection under Rule 26(c) in any event. The subpoena seeks relevant information: the case turns on when the plaintiff's premium checks were written, mailed, and processed, and the bank's records are evidence of that timing. But the subpoena is overbroad. The court modifies it to the records relevant to the premium payment: monthly statements for April to July of each year from 2020 to 2024 and front-and-back copies of (1) all checks payable to Transamerica during those years, (2) checks numbered 17516 through 17526, and (3) the five checks on either side of each other year's annual premium check during those years. Documents produced must be designated "confidential" under the parties' protective order.[5]

The plaintiff's request for attorney's fees is denied: the subpoena seeks documents relevant to the core dispute. The overbreadth is "normal advocacy," not sanctionable conduct. *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013).

## STATEMENT

### 1. The Lawsuit and the Alleged Backdating

On May 16, 2012, when he was 68, the plaintiff bought a Transamerica life-insurance policy, with a face amount of $1 million and annual premiums of $24,660 for the first twenty years.[6] The

[3] Subpoena, Ex. A to Cullen Decl. – ECF No. 45-2 at 1, 5.

[4] Mot. – ECF No. 45 at 2–3, 5, 10–11. The trial judge referred discovery to the undersigned. 2/9/2026 Docket Entry. The motion can be decided without oral argument. Civil L.R. 7-1(b).

[5] Stipulated Protective Order – ECF No. 53 at 3.

[6] Compl. – ECF No. 1 at 4 (¶¶ 18–20).

complaint alleges that Transamerica delays processing premium checks and then demands higher premiums based on the "late" payments.[7] The plaintiff mailed his 2023 premium check (check number 17521, dated May 19, 2023) one to two days after the date, but the back of the check shows that Transamerica's bank processed it on June 23, 2023.[8] On April 29, 2024, Transamerica sent a letter demanding an increased premium of $43,990.04 because the 2023 payment was late.[9] At the February 26, 2026, case-management conference, the plaintiff's counsel explained that Transamerica "sit[s] on payments and claim[s] that they were late paid or beyond certain deadlines, triggering their ability to then jack up premiums dramatically to price people out of their policies."[10]

Transamerica's defense is that the plaintiff backdated the check and did not mail it until at least June 13, 2023, shown by (1) the June 23 processing date on the check, (2) a recorded customer-service call on June 13, when the plaintiff reported that his premium notice had been sent to an outdated address and said, "So the premium will be paid very quickly here. But your file needs to note that it was coming in a bit late before," and (3) similar gaps between check and processing dates for the plaintiff's 2021 and 2022 premium checks.[11] In party discovery, Transamerica asked for copies of checks 17516 through 17526 (on the theory that the surrounding checks might reveal a similar pattern). The plaintiff responded that he lacked possession, custody, and control of the checks and believed that Mechanics Bank had them.[12]

**2. The Subpoena**

On June 16, 2026, with notice to the plaintiff, Transamerica served a Rule 45 subpoena on Mechanics Bank (with a return date of July 7 at 10 a.m.) for production of two categories of

[7] *Id.* at 2 (¶¶ 3, 4).

[8] *Id.* at 5 (¶¶ 22–23); Check, Ex. 2 to Smelley Decl. – ECF No. 50-3 at 2.

[9] Compl. – ECF No. 1 at 5 (¶ 25).

[10] 2/6/2026 Tr., Ex. 1 to Smelley Decl. – ECF No. 50-2 at 4.

[11] Opp'n – ECF No. 50 at 2–5; Check, Ex. 2 to Smelley Decl. – ECF No. 50-3 at 2; Call Tr., Ex. 3 to Smelley Decl. – ECF No. 50-4 at 5.

[12] Opp'n – ECF No. 50 at 5; Pl.'s Resp. to RFP No. 19, Ex. 4 to Smelley Decl. – ECF No. 50-5 at 3 (listing Mechanics Bank's address in Walnut Creek).

documents: (1) the monthly account statements for the Robert L. Sanders Professional Corporation checking account (for the plaintiff's law practice) for 2020 through 2024, and (2) copies of all checks drawn on the account during the same years.[13]

On June 25, 2026, the parties conferred by videoconference. The plaintiff objected to the subpoena's scope and offered redacted statements that left visible checks to Transamerica. Transamerica explained its backdating theories and said it would consider a shorter time period but would not limit the subpoena to checks written to it.[14]

On July 7, 2026, at 6:26 p.m. (after the 10:00 a.m. return deadline), the plaintiff moved to quash the subpoena.[15] Later, after full briefing, the parties stipulated to a protective order.[16]

## LEGAL STANDARD

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The court must limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

Rule 45 incorporates these limits and requires the court, on timely motion, to quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)–

---

[13] Subpoena, Ex. A to Cullen Decl. – ECF No. 45-2 at 2, 5; Notice of Subpoena, Ex. B to *id.* – ECF No. 45-3 at 2–3; Mot. – ECF No. 45 at 2–3, 5–6; Reply – ECF No. 51 at 5, 10. The subpoena designates a place of compliance in Los Angeles. No party questions the court's authority to resolve the dispute. The district judge referred discovery, the plaintiff noticed the motion here, it is essentially party discovery (even if Mechanics Bank has the records), and — as discussed below — relief is sought under Rule 26(c), which operates as a limit on the discovery that parties may take. *See Monte H. Greenawalt Revocable Tr. v. Brown*, No. 2:12-cv-01983-LRH-VCF, 2013 WL 6844760, at *2 (D. Nev. Dec. 19, 2013) (court can resolve a Rule 26(c) motion for a protective order regardless of Rule 45 authority).

[14] Mot. – ECF No. 45 at 5–6; Cullen Decl. – ECF No. 45-1 at 2 (¶¶ 5–6); Opp'n – ECF No. 50 at 7; Smelley Decl. – ECF No. 50-1 at 2 (¶ 2).

[15] Mot. – ECF No. 45 (receipt shows the filing time).

[16] Stipulated Protective Order – ECF No. 53; Order Granting Stip. – ECF No. 55.

United States District Court
Northern District of California

(iv).[17] "The moving party bears the burden of persuasion on a motion to quash, but the party issuing the subpoena must demonstrate that the discovery is relevant." *In re Rule 45 Subpoenas Issued to Google LLC & LinkedIn Corp.*, 337 F.R.D. 639, 645 (N.D. Cal. 2020). The party serving the subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and the court "must enforce this duty." Fed. R. Civ. P. 45(d)(1). Courts may, in their discretion, impose sanctions for failure to comply, including attorney's fees. *Id.*; *Legal Voice*, 738 F.3d at 1185. "[F]ailure [to] narrowly [] tailor a subpoena may be a ground for sanctions," but a court "need not impose sanctions every time it finds a subpoena overbroad" because "such overbreadth may sometimes result from normal advocacy." *Legal Voice*, 738 F.3d at 1185. A court may impose sanctions "when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *Id.*

The general rule is that a party lacks standing to move to quash a third-party subpoena unless it claims a personal right or privilege with respect to the documents requested by the subpoena. *Wells Fargo & Co. v. ABD Ins.*, No. C 12-03856 PJH (DMR), 2012 WL 6115612, at *2 (N.D. Cal. Dec. 10, 2012); *see* 9A Charles A. Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 2459 (3d ed. 2026); Karen L. Stevenson et al., California Prac. Guide: Fed. Civ. Proc. Before Trial ¶ 11:2286 (The Rutter Group 2025) (collecting cases). A party thus cannot object to a non-party subpoena on relevance or undue-burden grounds that belong to the non-party where the non-party itself has not objected to the request. *Wells Fargo*, 2012 WL 6115612, at *2; *accord Botta v. PricewaterhouseCoopers LLP*, No. 18-CV-02615-RS (LB), 2018 WL 6257459, at *2 (N.D. Cal. Nov. 30, 2018). But a party "may seek a protective order pursuant to Rule 26(c)" concerning a non-party subpoena if "its own interest is jeopardized by the discovery sought from the non-party." *Wells Fargo*, 2012 WL 6115612, at *2. Under Rule 26(c)(1), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden

---

[17] Nonparties unrelated to the litigants should not be burdened to the same extent as litigants, and requests to them must be narrowly tailored to meet specific needs for information. *Updateme Inc. v. Axel Springer SE*, No. 17-cv-05054-SI (LB), 2018 WL 5734670, at *3 (N.D. Cal. Oct. 31, 2018) (collecting cases). Mechanics Bank has not moved to quash the subpoena.

or expense," including by limiting the scope of discovery. Fed. R. Civ. P. 26(c). "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips v. GMC*, 307 F.3d 1206, 1210–11 (9th Cir. 2002). A protective order does not excuse the party seeking discovery from showing relevance. *Cf. Cacique, Inc. v. Robert Reiser & Co., Inc.*, 169 F.3d 619, 622–23 (9th Cir. 1999).

California recognizes a constitutional right to privacy that "extends to one's confidential financial affairs," including a customer's bank records. *Valley Bank of Nev. v. Super. Ct.*, 15 Cal. 3d 652, 656–58 (1975). Even so, courts permit discovery of bank and financial records where the need for the records outweighs the privacy interests at stake, particularly where those privacy interests can be adequately protected by tailored discovery or a protective order. *See, e.g.*, *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 191–92 (C.D. Cal. 2006); *In re Heritage Bond Litig.*, No. CV 02-1475-DT (RCX), 2004 WL 1970058, at *5 n.12 (C.D. Cal. July 23, 2004).

## ANALYSIS

Preliminarily, the plaintiff has standing to challenge the subpoena for the bank records of his professional corporation, which (practically) is a ledger of his professional and financial life.[18] California recognizes a privacy interest in confidential financial affairs, including one's bank records. *Valley Bank*, 15 Cal. 3d at 656–58. The plaintiff has standing to challenge the subpoena on privacy and privilege grounds.[19] *Wells Fargo*, 2012 WL 6115612, at *2; *Botta*, 2018 WL 6257459, at *2. He cannot litigate any compliance burdens on Mechanics Bank, which did not object to the subpoena.[20] *Wells Fargo*, 2012 WL 6115612, at *2. The standing issue matters little in any event: the plaintiff alternatively seeks a protective order under Rule 26(c), which is available to a party whose privacy interests are jeopardized by non-party discovery. *Id.*

[18] Mot. – ECF No. 45 at 5, 7–8; Reply – ECF No. 51 at 5–7.

[19] Mot. – ECF No. 45 at 8.

[20] *See supra* n.17.

The records are relevant: the plaintiff claims that checks were mailed on time and treated as late, and Transamerica contends (with some support) that the checks were written late and dated early. Both accounts depend on evidence of timing: the dates of the checks, the sequence of check numbers, the checks' posting dates, and the surrounding financial circumstances when the premiums were due. The subpoenaed records supply that evidence. Front-and-back check images show the date of the check and the processing chain. Statements show posting dates, check numbers, amounts, and account balances. Comparing the 2023 premium check (number 17521, dated May 19) with its numerical neighbors could corroborate or undercut backdating, depending on the dates on the checks. The same comparisons for the 2021 and 2022 premiums test Transamerica's contention that the checks show the same pattern. The mailed-to-processed intervals for the other years' premium checks could rebut the alleged shelving scheme. Balances around each May 16 due date bear on Transamerica's motive theory.[21] This is relevance under Rule 26(b)(1).

The plaintiff's evidentiary objections do not change the analysis. He objects that the June 13, 2023, call transcript is not authenticated.[22] That argument may have force if the transcript is offered to prove the merits: authenticity and exceptions to the hearsay rule (party admissions and business records) need to be navigated for admissibility. But for discovery, relevance does not require admissible proof of the facts that a party hopes to establish: discoverable information "need not be admissible in evidence." Fed. R. Civ. P. 26(b)(1). Transamerica's defense also does not stand or fall on the June 13 call date: the front and back of the check — dated May 19, processed June 23 — have the same five-week gap that the plaintiff attributes to shelving and Transamerica attributes to backdating. Transamerica is entitled to discovery directed to the parties' competing explanations for that gap.

The issue then is, what discovery is relevant and proportional to the parties' articulated theories (and not overbroad).

---

[21] Opp'n – ECF No. 50 at 4–7.

[22] Reply – ECF No. 51 at 12–14.

United States District Court
Northern District of California

Transamerica proposes a targeted approach for 2023: examine the dates on the checks numbered around the premium payment (check 17521).[23] That justifies front-and-back copies of checks 17516 through 17526, a set that the plaintiff identifies as an acceptable compromise that the bank possesses (and he does not).[24] The same logic covers the other years that Transamerica has put at issue: for each annual premium check for 2020 to 2024, the check and its immediate numerical neighbors are evidence of the mailing-to-processing intervals, which may corroborate or undercut the alleged shelving scheme.[25] The insufficient-funds theory justifies showing the account's condition in the window when checks were written, mailed, and processed: premiums were due in mid-May, the disputed processing in 2023 ran through late June, and thus statements for April through June of each year capture that window.[26]

The rest of the subpoena — every check to every payee for sixty months of statements — rests on Transamerica's argument that there may be a broad practice of backdating checks.[27] That argument converts targeted discovery into a general audit of a professional practice's complete financial life: rent, vendors, service providers, payments implicating clients and third parties who are strangers to this case — on the chance that somewhere there is a date out of sequence.[28] That demand is overbroad, not just because of privacy interests but also because it is not the targeted, proportional discovery required by Rules 45 and 26(b)(1). *Valley Bank*, 15 Cal. 3d at 656–58 (privacy); *In re Rule 45 Subpoenas*, 337 F.R.D. at 645; *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637–38 (C.D. Cal. 2005).

The result is an order for the production of the following records: monthly statements for April to July of each year from 2020 to 2024 and front-and-back copies of (1) all checks payable to Transamerica during those years, (2) checks numbered 17516 through 17526, and (3) the five

---

[23] Opp'n – ECF No. 50 at 4–5.

[24] Reply – ECF No. 51 at 8; Pl.'s Resp. to RFP No. 19, Ex. 4 to Smelley Decl. – ECF No. 50-5 at 3.

[25] Opp'n – ECF No. 50 at 6.

[26] Compl. – ECF No. 1 at 4–5 (¶¶ 22–23).

[27] Opp'n – ECF No. 50 at 6.

[28] Mot. – ECF No. 45 at 9; Reply – ECF No. 51 at 10.

United States District Court
Northern District of California

checks on either side of each other year's annual premium check during those years. Documents produced must be designated "confidential" under the parties' protective order.

The request for fees is denied. They are not warranted. Sanctions are discretionary. *Legal Voice*, 738 F.3d at 1185. The evidence sought had a legitimate core aimed at the case's central fact dispute. The subpoena's overbreadth is normal advocacy, not bad faith or an improper purpose that would support imposing sanctions. *Id.*

## CONCLUSION

This resolves ECF No. 45. The document productions must be made under the protective order, as directed above.

**IT IS SO ORDERED.**

Dated: August 17, 2026

LAUREL BEELER
United States Magistrate Judge